IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH DIVISION

|  |  |  |
|---|---|---|
| CUSTOM TOOL & GRINDING, INC, | ) | Civil Action No. 2:25-CV-01126-NR-CBB |
|  | ) |  |
| Plaintiff, | ) | United States District Judge |
|  | ) | J. Nicholas Ranjan |
| vs. | ) |  |
|  | ) | United States Magistrate Judge |
| AUTO-OWNERS INSURANCE | ) | Christopher B. Brown |
| COMPANY, | ) |  |
|  | ) |  |
| Defendant, | ) |  |

**REPORT AND RECOMMENDATION
ON DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS,
ECF No. 21**[1]

**Christopher B. Brown, United States Magistrate Judge.**

## I.     Recommendation

Plaintiff Custom Tool & Grinding, Inc. ("Custom Tool") initiated this action against its insurer Defendant Auto-Owners Insurance Company ("Auto-Owners") seeking coverage due to the failure of a key piece of its business's manufacturing equipment.  ECF No. 1-1.  Custom Tool brings state law claims for breach of contract (Count I) and bad faith (Count II).  *Id.*

---

[1]     This matter has been referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b).

This case was originally filed in the Court of Common Pleas of Allegheny County and Auto-Owners removed it to this Court.  ECF No. 1.  The Court has subject matter jurisdiction under 28 U.S.C. § 1332.[2]

Pending before the Court is Auto-Owners Partial Motion for Judgment on the Pleadings on the bad faith claim only.  ECF No. 21.  The Motion is fully briefed and ripe for consideration.  ECF Nos. 21-22, 24-25.

After reviewing the motion and the opposition to it, as well as the relevant case law, it is respectfully recommended that the Motion for Judgment on the Pleadings on the bad faith claim be DENIED as there remains a material dispute of fact that must be resolved through discovery.

## II.    Report

### a.  Factual and Procedural Background

Plaintiff Custom Tool is a for-profit corporation.  ECF No. 1-1.  This dispute centers around insurance coverage for Custom Tool's Computer Numerical Control Tool & Cutter Grinder (the "Equipment") which "unexpected[ly]" and "abrupt[ly]" failed on April 28, 2023.  *Id.* at ¶ 10.  Custom Tool brings two counts for Breach of Contract and Bad Faith against Defendant Auto-Owners.  *Id.* at ¶¶ 23-37.  Custom Tool alleges that its business operations have suffered losses from Auto-Owner's failure to indemnify it for the Equipment's breakdown.  *Id.* at ¶ 22.

Auto-Owners issued Custom Tool a "Tailored Protection [Insurance] Policy" containing an Equipment Breakdown Coverage endorsement, identified as policy

---

[2]     Custom Tool and Auto-Owners are citizens of different states and the amount in controversy exceeds the jurisdictional threshold.  *See* ECF Nos. 2, 35.

number 68004722 (the "Policy"). *Id.* at ¶ 7. *See also* ECF No. 1-1 at 12 to 1-3 at 58. The Policy was effective from August 10, 2022 through August 10, 2023. *Id.*

The Policy's Equipment Breakdown Coverage Endorsement provides:

"Equipment Breakdown" means:
(1) Physical loss or damage both originating within:
(a) Boilers, fired or unfired pressure vessels, vacuum vessels, and pressure piping, all normally subject to vacuum or internal pressure other than static pressure of contents, excluding:
1) Waste disposal piping;
2) Any piping forming part of a fire protective system;
3) Insulating or refractory material including any surrounding shell; and
4) Any water piping other than:
a) Boiler feed water piping between the feed pump and the boiler;
b) Boiler condensate return piping; or
c) Water piping forming part of a refrigerating or air conditioning system.

(b) All mechanical, electrical, "electronic equipment" or fiber optic equipment; and
(2) Caused by, resulting from, or consisting of:
(a) Mechanical breakdown;
(b) Electrical or electronic breakdown and "electronic equipment deficiency"; or
(c) Rupture, bursting, bulging, implosion, or steam explosion.
(3) However, "Equipment Breakdown" does not mean:
Physical loss or damage caused by or resulting from any of the following; however, if loss or damage not otherwise excluded results, then we will pay for such resulting damage:

(a) Wear and tear;
(b) Rust or other corrosion, decay, deterioration, hidden or latent defect, "fungi", wet rot, dry rot, virus, bacteria or any other quality in property that causes it to damage or destroy itself;

*See* Policy, ECF No. 1-2 at 11.

Following the abrupt failure of the Equipment in April 2023, Custom Tool submitted an insurance coverage claim to Auto Owners. ECF No. 1-1. at ¶ 11. Auto-Owners then directed a company, Mutual Boiler, to act as adjuster and inspect the Equipment. *Id.* at ¶ 12. Mutual Boiler, in turn, retained and directed Industrial Loss Consultants ("ILC") to investigate and evaluate the Equipment. *Id.* at ¶ 14. According to Custom Tool, neither Auto-Owners, Mutual Boiler, nor ILC inspected the Equipment to verify its condition. *Id.* at ¶¶ 13, 15.

Instead, Auto-Owners issued a payment to Custom Tool for $47,293.59. *Id.* at ¶ 16. Custom Tool alleges this payment did not compensate them fully under the

Equipment Breakdown Endorsement to the Policy. *Id.* On October 31, 2023, ILC

valuated and reported the Equipment's loss to be $96,862.61 and adjusted the cost

of repair to be $67,791.69. *Id.* at ¶ 17. *See also* ECF No. 1-3 at 59-60. Auto-Owners

partially denied "any further compensation" for Custom Tool's claim on January 2,

2024 due to the Policy's "wear and tear exclusion." *Id.* at ¶ 18.

On April 29, 2024, Custom Tool made a written demand for an appraisal

pursuant to the Policy's Loss Conditions provision. *Id.* at ¶ 19. *See also* ECF No. 1-

3 at 61-62. The Loss Conditions provision reads:

**E.  LOSS CONDITIONS**
The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.

\*\*\*

**2.  Appraisal**
If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

a.  Pay its chosen appraiser; and
b.  Bear the other expenses of the appraisal and umpire equally.
If there is an appraisal, we will still retain our right to deny the claim.

*See* ECF No. 1-2 at 31. Auto-Owners then denied Custom Tool's request for such

appraisal. ECF No. 1-1 at ¶ 20. *See also* ECF No. 1-3 at 63-64.

Auto-Owners' version of events in the Amended Answer is largely the same.

*See* ECF No. 7. The fundamental difference is that Auto-Owners alleges Custom

Tool did not tender the insurance claim until July 31, 2023, three months *after* the

alleged Equipment failure.  *Id.* at ¶ 12.  Auto-Owners also allege that, by then, Custom Tool had "destroyed the relevant portions of the Equipment and the parts plaintiff removed from the Equipment, denying [Auto-Owners] of the opportunity to physically inspect the Equipment."  *Id.  See also* ¶¶ 13, 15-16.  Consequently, neither Auto-Owners, Mutual Boiler, nor ILC were able to properly inspect the equipment.  *Id.* at ¶¶ 12-13, 15-16.  Despite this, ILC evaluated the claim which Auto-Owners later denied due to wear and tear, which is excluded under the Policy. *Id.  See also* ECF Nos. 7-2, 7-3.

Auto-Owners also alleges that a further appraisal was inappropriate because "the appraisal process is not designed to address issues of coverage, including a partial denial for wear and tear."  *Id.* at ¶¶ 19, 20.  *See also* ECF Nos. 7-4, 7-5.

### b.  Standard of Review – Fed. R. Civ. P. 12(c)

Federal Rule of Civil Procedure 12(c) provides "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  "The pleadings are closed after an answer is filed, along with a reply to any additional claims asserted in the answer."  *Isaac's Deli, Inc. v. State Auto Prop. and Cas. Ins. Co.*, 539 F. Supp. 3d 424, 428 (E.D. Pa. 2021) (quoting *Atiyeh v. Nat'l Fire Ins. Co. of Hartford*, 742 F. Supp. 2d 591, 595 (E.D. Pa. 2010)).

Judgment on the pleadings is appropriate when "the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law."  *Rosenau v. Unifund Corp.*, 539 F.3d 218,

221 (3d Cir. 2008) (citing *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 290 (3d Cir. 1988)); *see also Zimmerman v. Corbett*, 873 F.3d 414, 417 (3d Cir. 2017) (quoting *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 220 (3d Cir. 2005)).

When deciding a motion for judgment on the pleadings, the Court considers the pleadings and exhibits attached thereto, matters of public record, and "undisputedly authentic documents attached to the motion for judgment on the pleadings if plaintiffs' claims are based on the documents." *Atiyeh,* 742 F. Supp. 2d at 595; *see also Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 195 (3d Cir. 2019). The allegations "presented in the pleadings and the inferences to be drawn therefrom" must be accepted and construed "in the light most favorable to the nonmoving party." *Rosenau*, 539 F.3d at 221.

"A motion for judgment on the pleadings based on the defense that the plaintiff has failed to state a claim is analyzed under the same standards that apply to a Rule 12(b)(6) motion." *Zimmerman v. Corbett*, 873 F.3d 414, 417 (3d Cir. 2017) (quoting *Revell v. Port Auth. of New York, New Jersey*, 598 F.3d 128, 134 (3d Cir. 2010). "To state a plausible claim for relief – and to avoid a judgment on the pleadings – the non-moving party's factual allegations must 'raise a right to relief above the speculative level,' . . . and must do more than 'plead[ ] facts that are 'merely consistent with' a defendant's liability.'" *PNC Bank, N.A. v. Axis Ins. Co.*, 720 F. Supp. 3d 367, 373 (W.D. Pa. 2024) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"In ascertaining whether the party moving for a judgment on the pleadings has met its burden, the Court must give the non-moving party 'the benefit of every favorable inference.'" *PNC Bank, N.A.,* 720 F. Supp. 3d at 373 (quoting *Malleus v. George,* 641 F.3d 560, 563 (3d Cir. 2011), as amended June 6, 2011) (in turn quoting *Kulwicki v. Dawson,* 969 F.2d 1454, 1462 (3d Cir. 1992)). "If a comparison of the averments in the competing pleadings reveals a material dispute of fact, judgment on the pleadings must be denied." *Capitol Specialty Ins. Corp. v. West View Apartments, Inc.*, No. 21-11675, 2021 WL 6101663, at *1 (11th Cir. Dec. 22, 2021) (per curiam) (citing *Perez v. Wells Fargo N.A.,* 774 F.3d 1329, 1335 (11th Cir. 2014)).

With this standard of review in mind, the Court now turns to Auto-Owner's Motion for Judgment on the Pleadings.

### c. Discussion

Custom Tool brings a statutory bad faith claim under 42 Pa. C.S.A. § 8371 premised on Auto-Owner's failure to inspect the Equipment and failure to offer an appraisal. ECF No. 1-1 at ¶¶ 30-37. Auto-Owners moves for judgment on the pleadings, arguing Custom Tool cannot meet either element of a bad faith claim. ECF No. 22. As explained below, there is a material dispute of fact regarding why Auto-Owners did not inspect the Equipment prior to issuing its coverage position which must be resolved through discovery. Therefore, judgment on the pleadings is premature.

To prevail on a statutory bad faith claim, a plaintiff must demonstrate "'by clear and convincing evidence, (1) that the insurer did not have a reasonable basis

for denying benefits under the policy and (2) that the insurer knew or recklessly disregarded its lack of a reasonable basis in denying the claim.'" *Gibson v. State Farm Mut. Auto Ins.* Co., 994 F.3d 182, 190-91 (3d Cir. 2021) (quoting *Rancosky v. Washington Nat'l Ins. Co.*, 170 A.3d 364, 377 (Pa. 2017)).

The Third Circuit Court of Appeals has explained that bad faith "is a frivolous or unfounded refusal to pay, lack of investigation into the facts, or a failure to communicate with the insured." *Gallatin Fuels, Inc. v. Westchester Fire Ins. Co.*, 244 F.App'x 424, 433 (3d Cir. 2007). *See also Shaffer v. State Farm Mut. Auto. Ins. Co.*, 643 F.App'x 201, 204 (3d Cir. 2016) ("A claim for bad faith may be premised on an insurer's bad faith in investigating a claim, such as by failing to conduct a good faith investigation into the facts or failing to communicate with the claimant").

"Because bad faith claims are fact specific, to survive a motion to dismiss 'a plaintiff must plead specific facts as evidence of bad faith and cannot rely on conclusory statements.'" *Bengal Converting Servs., Inc. v. Landmark Am. Ins. Co.*, No. 2:24-CV-3332, 2025 WL 720087, at *10 (E.D. Pa. Mar. 5, 2025) (quoting *Toner v. GEICO Ins. Co.*, 262 F. Supp. 3d 200, 208 (E.D. Pa. 2017)). A plaintiff must specifically describe what was unfair, *Camp v. State Farm Fire & Cas. Co.*, No. CV 25-3384-KSM, 2025 WL 2637230, at *3 (E.D. Pa. Sept. 11, 2025) (quoting *Toner*, 262 F. Supp. at 208), and essentially "describe who, what, where, when, and how the alleged bad faith conduct occurred." *Mattia v. Allstate Ins. Co.*, No. 14-cv-2099, 2014 WL 2880302, at *4 (E.D. Pa. June 24, 2014).

With the bad faith standard in mind, both parties in this case agree that Auto-Owners did not inspect the Equipment prior to issuing its coverage position. The parties disagree, however, relative to other key facts.

Reading the Complaint in the light most favorable to Plaintiff, Custom Tool alleges Auto-Owners made a choice to issue its coverage position without first inspecting the Equipment and conducting a full investigation.  ECF No. 1-1 at ¶¶ 13, 15.  At this stage, this allegation alone supports a bad faith claim as it suggests the insurer did not have a reasonable basis for denying benefits and did so knowingly or recklessly.

By contrast, Auto-Owners submits that it was not provided a chance to inspect the Equipment because Custom Tool repaired it first and/or otherwise "destroyed" key parts of it before tendering the claim.  ECF No. 7 at ¶ 16.  In other words, Auto-Owners implies it had no ability to inspect the Equipment and the only remaining choice was to conduct a limited investigation, *i.e.* a "desk review" based on ILC's evaluation (without inspection) that the failure of the Equipment was due to wear and tear.  *Id.  See also* ECF No. 7-1.

These two interpretations of the situation are materially different. Given that, judgment on the pleadings is inappropriate at this juncture.  *See West View Apartments.,* 2021 WL 6101663, at *1 ("If a comparison of the averments in the competing pleadings reveals a material dispute of fact, judgment on the pleadings must be denied").

As stated above, a policyholder must allege the insurer did not have a reasonable basis for denying benefits under the policy. *Gibson,* 994 F.3d at 190-91. An insurer acts "in bad faith and without reason when it 'arbitrarily refuse[s] to accept evidence of causation.'" *Dailey v. Allstate Vehicle & Prop. Ins. Co.,* No. CV 25-2350, 2025 WL 3026261, at *1 (E.D. Pa. Oct. 29, 2025) (quoting *Condio v. Erie Ins. Exch.,* 899 A.2d 1136, 1143 (Pa. Super. Ct. 2006)). In this respect, why no inspection occurred matters. On the one hand, if Auto-Owners arbitrarily refused to accept evidence of the Equipment failure by not inspecting it, then it might not have had a reasonable basis for denying benefits. *See Dailey,* 2025 WL 3026261, at *2 (finding plaintiffs plausibly alleged a lack of reasonable basis because they pled that "despite providing [insurer] with evidence establishing the sudden nature of the leak, [insurer] disregarded the evidence provided," and denied the claim based on unsubstantiated allegations); *Dasch v. USAA Cas. Ins. Co.,* No. 3:25-CV-00766, 2025 WL 2422618, at *4 (M.D. Pa. Aug. 21, 2025) (finding plaintiff alleged inadequate investigation where defendant paid substantially less than policy limits, and substantially less than "documents, police report, photographs, and numerous medical records" showed). *See also Ironshore Specialty Ins. Co. v. Conemaugh Health Sys., Inc.,* 423 F. Supp. 3d 139, 155 (W.D. Pa. 2019) (bad faith can include a "scattershot investigation") (citing *Rancosky*, 170 A.3d at 379 (Wecht, J., concurring)). On the other hand, if Auto-Owners' did have a reasonable basis to deny the claim based on the "desk review" due to Custom Tool somehow preventing it from inspecting the Equipment, then the legal pendulum could swing in the other

10

direction.  In light of this, discovery is needed to provide clarity on the circumstances as a decision on this issue cannot be made at this stage without more information.

Apart from the inspection, open questions also remain about the denial of an appraisal.  Auto-Owners states it denied Custom Tool's request for an appraisal because its decision was based on the policy terms related to wear and tear and did not have anything to do with valuation.  ECF No. 7 at ¶¶ 19-20.  *See also* ECF No. 22 at 6-7.  However, by Custom Tool's version, the conclusion about "wear and tear" itself was based on a desk review, so it is impossible to tell whether the determination truly involves the policy terms or a valuation – Auto-Owners could not necessarily know this mechanical failure was caused by "wear and tear" if it never inspected the Equipment.  ECF No. 1 at ¶¶ 19-20.  *See also* ECF No. 24 at 2.  As stated above, more discovery is needed to determine why the Equipment was not inspected.  At that point, this appraisal question will also be clearer.

Since there is a material dispute of fact between each parties' version of events, it is respectfully recommended that the Motion for Judgment on the Pleadings be denied.

### III.   Conclusion

For the reasons stated herein, it is respectfully recommended that Defendants' Motion for Judgment on the Pleadings be DENIED.

In accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72, the parties may seek review by the District Court by filing Objections to the Report and

Recommendation within fourteen (14) days of the filing of this Report and Recommendation.  Any party opposing the objections shall have fourteen (14) days from the date of service of Objections to respond thereto.  *See* Fed. R. Civ. P. 72(b)(2).  Failure to file timely objections will constitute a waiver of appellate rights. *See Brightwell v. Lehman*, 637 F.3d 187, 193 n.7 (3d Cir. 2011).


DATED this 12th day of May, 2026.

Respectfully submitted:

s/Christopher B. Brown
United States Magistrate Judge


CC:    Hon. J. Nicholas Ranjan
United States District Judge

All counsel of record, *via ECF*